Good afternoon. Illinois Appellate Court First District Court is now in session. The Honorable Justice Carl A. Walker presiding. Case number 24-1784, AMPMS Chicago v. Bedt, LLC. Okay, good afternoon, everyone. I am Justice Carl Walker, and I have here with me, Justices, Justice Ori Potensky and Justice Michael B. Hyman, and we're going to give each one of you approximately 20 minutes for your presentation. I'd like to have you to identify yourself and also ask the appellant to let us know if you want to save any time for rebuttal. Good afternoon, Justices. My name is Jonathan Weiss. I represent the plaintiff appellant, AMPMS Chicago, LLC. I would like to reserve time for rebuttal. Would it be 20 minutes for argument and then an entitlement to 10 minutes, or would you like me to reserve part of my 20 minutes for rebuttal? You should reserve part of your 20 minutes for rebuttal. Any amount you want. I'd like to reserve five minutes for rebuttal. Sure, we have that noted. Okay, Mr. Hickman. Good afternoon, Your Honors. My name is Corey Hickman. I represent Defendants at Belize in this matter, BEDT, LLC, DFM Management, LLC, Lighthouse Lakes Resort, LLC, Elizabeth Crater, Evan M. McLean, David Frankel McLean, Bonnie Starr McLean, Tessa K. McLean, Shirley S. Lady, James Owens, Virginia Owens, and Dan McLean. Thank you both. And now, Mr. Weiss, you may proceed. This is a case where my client, AMPMS, invested a $200,000 capital contribution into an Illinois LLC. We know the facts. We've read the briefs. We've read the record. We've read the operating agreement and the amendment and the opinion by the court below. Let me ask you a question to start.  In your reply brief, the first argument you make is about Section 8.3. And you state that 8.3 imposes requirements on the right to become a transferee or substitute member, not an additional member. Right? You hold to that? Correct. Okay, so have you ever read The Hound of the Baskerville by Conan Doyle? I was an English major, but I did not. Okay. Well, there's a line in there, and it's always been used now, but the dog that didn't bark. That's how Holmes solved it. Now, there's a dog that didn't bark here, and I find it nowhere in your brief, either your opening or your closing, and that's 8.6. And I'm sure you're familiar with 8.6. And that defines what a new member is, or additional member is. And it says specifically that an additional member refers to a new person admitted after the formation with two key conditions. It needs unanimous consent and compliance with all requirements cross-referenced in another section. And so that seemed to me to apply to 8.3. Since 8.3 does use the words additional member. I can respond to that, Justice. It's a fair question, and it's certainly not the strongest part of our argument or one that I would want to emphasize. And I think the reason we mentioned it is because in the other parts of the operating agreement, it refers to transferees and substitute members and distinctly refers to additional members otherwise. So one would think, just along the lines of interpreting legislation, that there was a reason for that. With that said, it's an operating agreement drafted by an attorney, presumably. And I think your point is well taken. And my focus really is on the other more equitable and contract-based aspects of why AMPMS is, in fact, a member of BEDT. So, Mr. Weiss, why don't you go ahead and get to your strongest argument that you said? That's not your strongest argument. Give us your strongest argument. Okay, I will. So the quick introduction, four parts, is AMPMS a member? They are, can they maintain individual claims for breach of fiduciary duty? And then we have the arbitration issue and whether Lighthouse Lakes should have been dismissed and whether the case- No, wait, you're giving us your strongest argument right now. And part of your strongest argument, what you just said, is that they are, in fact, a member. Yes. My question to you is, well, how do you distinguish that from all the other Illinois cases which have found that they wouldn't be a member because the formal admissions process is found in the operating agreement? And it's clear that a couple of things didn't happen. One is that they never signed off on it. Two, there's no unanimous consent of all the members. So, but you're telling us this is your strongest argument. So go ahead. I will get into my strongest argument. I apologize for not answering the question directly. My strongest argument, Your Honor, Justice, is that AMPMS acted in all ways as a member. It made a $200,000 capital contribution. It was given K-1s every year since its capital contribution. It was identified in the books and records as a- The issue isn't exactly there. But let me go to where we're headed, if you are correct, because to me that gets to the essence of where we're going here because I'm not quite clear where you're going. Because if you are right and you are a member, then there's any doubt that it doesn't go to arbitration? Isn't that then under the operating agreement, you have to go to a 10-day, you know, you try to resolve it by negotiating. If you can't, I don't know if you tried that or not, but if you can't, then you go to arbitration. So at the very least, aren't you going to arbitration here if we agree with you? Your Honor, if you agree, there is an argument that it can go to arbitration. The reason we filed this as a lawsuit and not as an arbitration action is because the arbitration clause talks about issues that arise out of the operating agreement. And in this case, I think issues arose that didn't necessarily arise out of the operating agreement. One example of that might be the transfer of what is referred to as the tick property, this real estate in Lake Geneva, to a different entity. Is that an issue that arises out of or relates to the operating agreement? I think that's questionable. Number two, and perhaps the stronger argument as to why at this point in time the case shouldn't be compelled to arbitration, is because the defendants made a substantive argument under 2619 on issues that were this action arbitrable would have been within the domain of the arbitrator to decide. What is that? That's not my understanding. The case you cite is a very different case because it did go to the merits. In this case, any time a party files a case in court that has an arbitration provision, what happens is a motion to dismiss. You know that. So that's exactly what happened here. A motion is dismissed under 2619. So I don't see how that's different. The judges ruled on the 2619. And so how did you get into the merits? I don't understand that. Well, I think we get into the merits because the overwhelming majority of the 2619 motion was with respect to the substantive merits of the case. Is BEDT a member? Does it have a right to seek claims for fiduciary duty? So the merits of the case, and I think the case law is relatively. But you can't get to that issue unless you have standing, right? So the issue that they raised under 690 was can you bring this action as a matter of law, right? Well, that is the first question. However, I think the answer to that question is one of substance and goes to the merits of the case. And if this whole case is subject to arbitration, that question alone that was just stated would be one for an arbitrator rather than make the decision while we're focused on whether or not. Are you saying Mr. Weiss that the question of membership should be one for the arbitrator? Is that what you're implying? If this case is one that is subject to arbitration, we don't think it is. If it were, then yes, I'm saying that that would be a question subject to arbitration and rather than file a motion. That I want to make sure we're talking about the same thing we're talking about. We are talking about membership. Well, there's, there's like, tons of cases that say that the issue of membership is decided by the court. Well, I think membership in an LLC. Yeah, I think it can be decided by the court, but if if the panel were to decide. Go ahead. No, if the panel were to decide that this case is subject to arbitration. 1 of the primary issues is would be in that arbitration would be whether or not. Is a member, so I want to take you somewhere else for a moment because I want to take, but I believe may be 1 of your stronger arguments and I just want to simply ask you what remedy are you seeking? Are you seeking reversal? Outright with direction to reinstate the complaint or remand with leave to a man? What are you seeking from us? I think we're seeking alternative relief, either a complete reversal or remand to permit us to amend the complaint, which we have never been allowed to do, which has left and PMS with no remedy whatsoever. And allows to keep 200,000 dollars in exchange for nothing. And that's the position that is taking at this point. So, how do you believe that this court should balance the adherence to the operating agreements formalities with that toe equitable idea that you've just presented? The perfect question and the reason the way I think we balance that is to look at the totality of the circumstances and the general case law in Illinois that even if a written contract isn't signed, it doesn't mean that it isn't enforceable or doesn't exist. And so, in this case, there were, in fact, several member new, newly admitted members that didn't sign in retribution, perhaps, or filing this lawsuit. The only. You mentioned you mentioned at least 2 of them in your. Right. Represented by counsel. Right. Correct. Exactly. And so, in this case, for since 2021, when made its contribution was documented as a member was issued K ones, there was no issue and the parties acted in compliance with the contract. That apparently was not signed by my client, but acted in compliance with the terms of that of that contract in an operating agreement is considered a contract. So, despite the fact that it wasn't signed, doesn't mean that isn't the member. And I think Illinois law as a general matter is pretty clear that even if a contract isn't signed, if the parties act in compliance with it, particularly in this case for several years and treat as a member in the ways that I pointed out in our brief. They are, in fact, a member and the operating agreement is enforceable, and they should be deemed a member. Okay. The other we do, but what do we do? If that's true, you're saying you don't have to apply 8.6 says. That executed an instrument, accepting and adopting the terms and provisions of the act that transferee, which is now you and the additional member. So, did you do that? I don't think I fully understood the question. I'll say it again. Okay, I'm going to put in the additional member has executed an instrument, accepting and adopting the terms and provisions of the articles of organization and disagreement. That's that's 8.3. Have you done that? You did that. Has it been signed? I said, have you executed an instrument, accepting and adopting the terms and provisions of the articles of organization and disagreement? That's what it says. Well, at this point in time, and this is why we raise the issue of discovery that the defendants have acknowledged that the other quote unquote members that didn't sign. Still never denied that their members are represented as members and that's the reason discovery may be helpful here because just simply because my client doesn't have a copy of a signed document. And we acknowledge that by whom. By your client doesn't know whether they signed a document or not. They don't recall and there's, there's a little bit of history here where that would make sense because there was a relationship between Dan McLean and my client. So, why didn't you have an affidavit under 191? We, I suppose that could have been possible, but we didn't think it was necessary because we thought it was so clear that by BDT treating in every conceivable way as a member that we weren't going to need a 191. That's your argument. There's two arguments you make right. I mean, there's one, there's an agreement that when you don't make that what you say is, it's implied that that you're implied a member right that that's the argument you're raising. Am I right. That's right. Yeah, you're not saying that it's in the agreement you just told me you don't know if you have assigned. So, as to the turn, I was was that you I'm sorry, just was that argument or was that was that the court's fine. I was just going to pull back from that. We are not arguing excellent point that they're a member by implication. We're arguing that they are a member for all intents and purposes by virtue of their capital contribution, how they were treated as a member and pursuant to the operating agreement. In some of the motive state cases that were cited by the defendants, the facts were completely different. We're looking at Illinois law. So, I can tell you that. Okay. Under Illinois law. There's an operating agreement, and you have to abide by that. It's a contract, right? So, you're saying that this contract doesn't apply. Is that is that what you're saying? No, or yes. No, I'm not saying the contract doesn't apply. You can't are you picking and choosing which provision apply. Are you referring to. Well, we're, we're, we're, we're saying that despite that provision. Despite that provision, the fact that the parties that there's no dispute that a 200,000 dollar capital contribution was made. And I don't there's no dispute that was treated in all respects as a member of this LLC, the lack of signature. That standing alone doesn't eviscerate a, and PMS is membership interest. What's your Illinois cases? Is it. Merit it's the marriage of a Schlichting and it's on page 23 of our brief and and basically it said it refers to what I was saying that if the parties act. Act and behave in the same way they would as though a contract, which an operating agreement is was signed. And it isn't signed, it's still enforceable pursuant to its terms as though it's been signed and that's exactly the situation that we have here. Okay, I just want to rewind a little bit. You're saying that you believe that am PMS is a member because everybody acted like it was a member, but they didn't act like it was a member on everything. For example, when they got rid of the tick property, they didn't consult and PMS about that at all. So. They didn't act like. B. E. D. T. didn't act like a PMS was a member on everything. They just acted like it was a member on some paperwork, the income tax forms and taking the money. So the bottom line is your you believe that you have to prove that and PMS was a member to get your $200,000 back and. What so or is that all you want or do you want to be a continuing member of including all of its existing liabilities now? What do you really want? What we really want is to be a continuing member of B. E. D. T. with all that comes with and with respect to the tick property and the transfer of B. E. D. T.'s undivided half interest. No one was consulted by that about that. In fact, we I mean, this is a little off brief, but we were the ones that found that an informed defendant's counsel that that had happened. I don't want to we said what we said about Dan McLean and the person that we're dealing with here and the type of person that the 1st district in the past has found him to be. But that transfer was made without any consultation whatsoever with any members of the LLC and the 1st district has found Dan McLean to be a recidivist fraudster. And he's been punished accordingly in the past for similar behavior. So, but the short answer a member in all its respects, not simply it's $200,000 back. I know you won't be surprised. I'm surprised that they want to be a full member of something that's run by a guy who's a federal court is found to be a fraudster. I just I'm just surprised that you're probably not surprised that I'm surprised that there's a related case. That's also before Judge Cohen, and there are various reasons that it's important that it remain a member. So, and those cases have been consolidated, so we're not paying attention to that. No, the only related, I just really was curious about what you really wanted and you've answered that question. Thank you. Thank you. Just assignment, did you have anything else? He's out of time. I was just going to say, I am 4 minutes over 1 2nd. I'm sorry. Did you have just as I did? You have a question. Let me just check 1 thing. So. If we agree with you. You would say the next step would be. What we would send it back to the court, we reverse, but what do we say about the arbitrary ability? What are you saying with regard to that? Arbitration clause was waived because the defendants chose to file a. But if we don't accept that, that's your only argument. And that the court actually, which it wasn't permitted to do under these circumstances, but the only argument is the waiver argument. Just since he's out of time, but did you have another question for him? Okay. All right. Thank you. Mr. Weiss. We will now hear from you. Mr. Thank you. Your honors this appeal concerns primarily a very narrow issue as you all have recognized. Did the plaintiff in this case, meet the requirements of the Illinois LLC act and the BDT operating agreement to become a member of BDT. But let me ask you a different question. I'm putting you in the shoes of the plaintiff. They pay $200,000. How do they get their money back? They assert a claim for unjust enrichment or some other equitable claim that they chose not to assert in this case. So you're saying there are other claims they could make. And whether they're a member or not is, is that important to those claims are not important to those claims. I'm not conceding the viability of any other claims, but if I was the plaintiff in this case, I'm not saying you're conceding any. I do not believe membership would be relevant to an unjust enrichment claim because that claim was essentially we gave you $200,000 we didn't get anything in return for it and we should get that money back. The plaintiff made the choice in this case, having 2 opportunities to draft a complaint to not include any claims for unjust enrichment or other equitable claims instead. It asserted 2 claims judicial dissolution and I don't know if there were 2, 2, they was a consolidated. They really had 1 chance. Okay. That's the consolidated complaint. So when you say 2, that's kind of. Not actually correct, so they never got a chance to amend that complaint. I understood your honor, but the point that I'm trying to make is if they, if we. Reverse on the membership. Then what happens next and you're just a hypothetical. Let's say we are or not. I'm just asking in your viewpoint, what would happen next? If the court reverses on the issue of membership and finds that is a member of, then the claims are all subject to arbitration. And this case would have to be dismissed or stayed subject to the mandatory binding arbitration clause. And then you, I'm sorry, just go ahead. This is just for clarity. Mr. Hickman, you say they've had 2 chances. But they never had a complaint that was dismissed. That's where this assignment was going earlier. And I just want to make it clear that what happened is that they filed a 1st amendment complaint. Simply to add lighthouse lake to this lawsuit. So, when you say they had 2 chances, some totally incorrect statement. Sure, understood your honor. And the only reason that I was saying that is just because we did brief a motion to dismiss on the original complaint. It was fully briefed. And then the amended complaint came after that, and they could have addressed the issues that were raised in the motion to dismiss, which are the same issues. That are before the court today, and that we're in our. Subsequent motion to dismiss, and they did not amend any facts to address those particular issues that they were aware of. So, that's the only reason why I said that they had 2 opportunities, but your honor's point is well taken. I understand there was no ruling on that 1st version of the complaint. So, if you say it would go to arbitration, who decides whether it's arbitrable under this agreement? Well, that would depend on the scope of this course ruling. If this court ruled that. The allegations were sufficient to establish that. Be that was a member of the LLC. Then it would, it would have to go to arbitration if the court, if the court were to find there was a question of fact. As to is membership in the LLC. That we need to, then I think the trial court would have to. Hold an expedited hearing and determine that issue to determine whether they are a member of the LLC. And then if they indeed are a member, if they're found to be a member, then it would have to be moved to arbitration. You know, it wouldn't go to arbitration unless they're a member court found to bring a member. Therefore, they did what they did. What I'm asking, though, is a little different because. What console has said is that. This may not be an arbitrable issue. Not every issue. It depends on the phrasing of the arbitration clause. Understood. So my question was more directed at that. Whether we would send it back for the court to determine the ability question. Or would that go in your. In your estimation to the arbitrator. Or arbitrators to decide understood. And that would be a question for the arbitrator. As plaintiff acknowledged in its own brief under the Illinois uniform arbitration act. The trial court may only consider the issue of whether there is an agreement to arbitrate in the 1st instance. Which, in this case, is whether there's membership in the LLC. So, once that question is determined, all questions of substantive arbitrability. Are to be determined by the arbitrator and we cited a case for that as well in our brief. So, going to the issue of membership. The agreement has there wasn't a signature on the agreement. On behalf of DFM. And that their attorney, in fact. And they have broad powers under the operating agreement to sign various things. So, why aren't. Why isn't the plaintiff a member. Sure, your honor. That's a great question. And I did see that argument in the briefs. And there's a few reasons why that argument fails. First, the plaintiff, the plaintiff itself was required to sign the amendment, not just the other members. And David McLean, who is the manager, who is the representative for DFM. Had the attorney, in fact, provision. Which allowed him to sign on behalf of the existing members, not on behalf of plaintiff itself, who also did not sign the agreement. So, shouldn't they be allowed to have discovery to find out whether the. Defendants even gave them an opportunity to sign. Apparently, they don't know. And your honor, that's the point that I was going to make is that. Plaintiff could have sought discovery under rule 191B before responding to the 2619 motion to dismiss, or they could have simply submitted an affidavit opposing the motion to dismiss stating. We signed the agreement, or we were never given an opportunity to sign the agreement. And they didn't do either of those things. And so it's our position that this argument is waived at this instance. And as your honor alluded to. If plaintiff did sign the amendment, it presumably would have had a copy of its own document. Even if they didn't, I mean, some people are bad at keeping things, but whether they did or didn't, that's not here or there. If they had signed it. It would appear that considering everything else that happened in the last 4 years that they would have been a member. Perhaps your honor, it's our position that not only would plaintiff have to have signed it, but the other members as well. Why would they have to sign it under the provisions? I think it's 11.1 that talks about, there's a section that talks about the duties of the attorney in fact, and has very broad duties. Yeah, yes, I understood your honor. And, um. Well, I don't think there's anything in the agreement that designates how the attorney in fact, is supposed to sign a document. It would be our position that there's nothing. There's no indication in the amendment that David McLean was signing in his capacity as attorney. In fact, on behalf of the other members, there's no notation like you'd see sometimes on a document that says he has a document that says he's an attorney. In fact, he signed the FM. Then he assigned it on that behalf. He's given that they're given that power, right? There's a document that says they're given that power and you're saying that they still have to put those little designation on there. Even though they have the power to do that. Is that that the law? If somebody doesn't put those doesn't say that that they can't be considered an executor or any other kind of appointment they could. And your honor, I think it would depend on his intent and signing the document, but I would also know that the amendment document itself provides on that specific document that it must be executed by all parties here to to be effective, not just by the manager. But at the end of the day, he can sign on behalf of everybody. It's, it's correct 11.1 does. Okay, so, you know, that's not something the. There's not that's not a dispute. So the question is, you have the $200,000. And they want to be a member. They thought they were a member. And the only thing, apparently, that wasn't done that should have been done is their signature. And that question comes down to your health to the agreement since it was signed by the attorney. In fact, so then the question is, they didn't sign it. But does the law allow them not to particularly under circumstances where there's no evidence that they were even given an opportunity to do so. And your honor, I think that I think that the law is clear that strict compliance is required with the requirements of an operating agreement for the admission of a new member in this case. If you look at the section 1, Mr. Hickman, just a 2nd, because I don't think I'm going to get a chance to jump in. If I don't just now. I need to know how do you reconcile your position that they're not a member. When everything was done, except for their own signature on the document. And I think more so than their signature on the document is the fact that they paid the $200,000. And then we have a situation where they, for tax purposes, they were treated as if they were members. They're listed on the on the K1. How do and now we all of a sudden the position is, despite us listening, listing you on the K1, despite you being listed on our internal corporate documents as a member. We're going to argue that you're not a member because 1 thing didn't happen and that is you didn't put your signature down, even though they've done everything else. How do you reconcile all of that on behalf of your client? Sure, thank you. I reconcile that again, but you have the language of the Illinois LLC act and the operating agreement has to have meaning. They're strict, their conditions precedence in the agreement that say that they shall be performed. There's case law that says that conditions preceded are the 1 condition is just as I said earlier. The 1 condition that wasn't performed. Maybe the condition that they were never allowed to perform. They were never granted an opportunity to perform. And again, your honor, if that is the case, plaintiff could have raised that in an affidavit. They didn't raise it. Instead, what they did is they stood on their own allegations, which attached to their complaint and unsigned version of the amendment that they could have only gotten from BDT. So they're up, they had an opportunity to sign the document. It appears from their own complaint. They didn't sign it. None of the other members signed it, except for pursuant to the power of attorney provisions, potentially that Justice Hyman mentioned earlier. And that's the version of the complaint that they chose to chose to file on this case. So, placing all that aside, placing all that aside, how do we get to dismissal with prejudice? Do you believe that was appropriate? Your honor, I do believe that dismissal with prejudice was appropriate because I don't see any way for plaintiff to cure their pleading in this case. That's contrary to Illinois law. Illinois is very liberal in terms of giving a first opportunity to amend a dismissed complaint because that's what we're talking about here. We're talking about giving them one opportunity to amend a dismissed complaint. And Illinois almost allows that and I would probably say 98% of all cases. I understood, your honor, and there is a very liberal standard in Illinois, but the only point I was making was there is a futility exception to that when it would be futile for them to attempt to amend their complaint. And in this case, as I stated, the amendments that plaintiff incorporated into its own pleading is not signed by the plaintiff. No, but even you said at the beginning, my first question was, if you were in their shoes, what you would do. And so there is other claims that can be brought. And so they might be able to get a claim together and there may be discovery later on that will just show that they were never even given that opportunity to sign. Nobody ever asked them. There was no email, no, no, nothing. And, you know, we'll see what everybody else had to. They don't know what the James's did. And, you know, as we said, we're dealing with individuals who have have a record and other cases that may not everything is meets the eye. So, in that situation. They're kind of behind the 8 ball here. They're out 200,000 dollars that we know. And, you know, what the facts are here is important. So, I understand what you're saying. So the question becomes down to whether they've waived it. As a result of not filing the 191 correct, your honor stands right now, Mr. Hickman, there's clearly an injustice going on. Now, what how do we how that injustice should be rectified is another question and probably not a question for this court to even answer right now, but there's an injustice. Understood your honor, and I'm perfectly willing to admit, as I did earlier in this hearing that plaintiff may have a viable claim for unjust enrichment, but they're the masters of their own complaint. And they chose not to bring that claim. In this case, and it's not it's not the trial court, nor is it this court's job to advise plaintiff as to speculate as to potential claims that plaintiff could assert. They asserted the claims that they did assert, and those claims are not viable at this juncture, given the attachments that they decided to attach to their complaint that show that they did. Yes and no, because it all boils down to what happened with regard to that, those signatures, because everything else has fallen into place. OK, and with regard, you know, if you treat one party different than all the other members, that's not going to go over well in the law. I mean, that's what they're saying. So they may have other they when we asked when Mr. Weiss was asked, you know, what do you really want here? I guess as much as he said, we want to be a member. So that's why they went down this particular route. They still want to be a member, which. Maybe they can. That's one of the things we have to determine. Correct, Your Honor. Otherwise, they just get the 200,000 back. So the alternative would be just to get 200,000 back and whatever else they might be entitled to and whatever claims they might bring, you know, so. But the other would be they stay a member of what they were offered and thought they were a member of. Right, and you're correct, I agree with you that the only the claims that are actually asserted in this case that does come down to exactly what happened with the agreement and who it was signed by. And the complaint, the version of the complaint we have now attaches an agreement that was unsigned and there was no affidavit that was presented stating otherwise. And there was no Rule 191 affidavit, which is their right under the Illinois Supreme Court rules to seek discovery before responding to a motion to dismiss. And they didn't do that, and therefore they've waived that argument. Your Honors have touched on most of the presentation that I was going to give, so if there's any other questions at this time, I'm happy to answer them. Otherwise, for the reasons that we've discussed, we believe that the trial court's opinion should be affirmed. Let me just ask one last question. Judge Addis missed it with prejudice. What's your argument that there was prejudice? I mean, I know you discussed in your brief, but I didn't see a valid argument. Excuse me, can you repeat the question, Your Honor? What is your argument that there's prejudice here, that they shouldn't be allowed to? Is there any prejudice? Are they amending their complaint? The only prejudice, I guess, would just be the additional time and expense required to respond. That's not a prejudice under the law, but beyond that, there's none. Other than a futility argument that we made earlier. That's the argument that we have in terms of not being permitted to amend at this stage. Thank you, Your Honors. Thank you, Mr. Hickman. Mr. Weiss, you reserved five minutes for rebuttal. You're muted, Mr. Weiss. Excuse me? Now we can hear you. Just a few points on rebuttal, and one goes to a point that Justice Hyman made. And I think it's critical here to consider in terms of the membership issue, in addition to the other points that we've already made. And that is Section 11.1 of the operating agreement. DFM, the manager of BDT, did execute that amendment. I assume that wasn't just for nothing. And the 11.1 of the operating agreement does appoint DFM as attorney, in fact, for all of the members. And specifically gives DFM the right to execute documents that it considers necessary or advisable in connection with the operating agreement. And has full power and authority to do and perform each and every act or thing, whatever requisite is advisable to be done in connection with the foregoing, as fully as such member might or could do personally. Well, the only conclusion I can come to by DFM, assuming AMPMS didn't sign, by DFM deeming it not advisable for someone who contributed $200,000 to BDT is they wanted to steal the money. And certainly, I think we could say it would be advisable for the newly admitted members, which were more than just AMPMS, to sign the operating agreement. DFM is the manager and an attorney, in fact, yet they didn't do what clearly would be advisable. What's your response to the 191 argument? I mean, we know you didn't do it, and you said you didn't think you needed to do it. But under the law, the fact that you didn't do it, you waived it. So where does that leave you? Two things. One, we didn't believe it was necessary simply because of the legal arguments that we made that we thought were fairly clear. Secondly, in their motion to dismiss, the defendants made the point that it was never signed. So rather that we took them at their word under Rule 137, that it was never signed. And, you know, so that was the second reason. So what you're saying now is there's no issue. You're saying taking them at their word as an admission in their pleading or their response that it is not signed by your client. Is that just what you're saying, right? I don't know that. You said they said it, and you're taking them at their word? Did I misunderstand you? As one of the – and I'm taking an officer of the court's word under Rule 137. And I'm also, in addition to that, the case law and our other arguments, we felt made it unnecessary. Okay, so if we do that, we think it's unnecessary, then what you're saying is that you knew that you hadn't signed it. We knew that we didn't have a signed copy, yes. But that's not what they said. They said it wasn't signed by you. Correct. That was the allegation. And we think under all the circumstances that is not relevant for the other reasons that we've stated in our brief. Well, it's relevant, but you don't think it's – under the case law, it's – Much better said. Relevant, but under the case law, not right, and also under 11.1, which DFM could have easily – And it's certainly – we're here today because it would be advisable, and DFM shirked that responsibility by not signing as attorney, in fact. Okay, Mr. Weiss, you're out. You can go ahead and close, though. Those were my only points, and for all the reasons that we've argued, we'd ask that the trial court's decision be reversed. Thank you. And we thank you both for your excellent argument. You know the case very well, and we do appreciate that. That's why we try to know the case very well, so that we can ask you the appropriate questions. And you both have done an excellent job today, so we thank you for that. Have a good day. Thank you, guys. Thank you very much.